IN THE SUPREME COURT OF TEXAS






IN THE SUPREME COURT OF TEXAS
 
════════════
No. 03-1128
════════════
 
Sandy Dew, Individually and 
as Representative of the Estate of Paul Dew, Deceased, and Carl Dew and Doris 
Dew, Petitioners,
 
v.
 
Crown Derrick Erectors, Inc., 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Ninth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued January 4, 
2005
 
 
 
Justice Medina delivered a plurality 
opinion, joined by Chief Justice 
Jefferson, Justice O’Neill, and Justice Wainwright.
 
Justice Brister filed a concurring 
opinion, joined by Justice 
Willett.
 
Justice Johnson filed a dissenting 
opinion, joined by Justice Hecht 
and Justice Green.
 
 
The issue in 
this wrongful death and survival action is whether the trial court erred in 
refusing to submit an inferential rebuttal instruction on “new and independent 
cause.” A divided court of appeals reversed and remanded for new trial, 
concluding that the trial court had erred in failing to submit a new and 
independent cause instruction because the evidence raised the issue. 117 S.W.3d 
526, 537. We do not agree that the evidence in this case required the submission 
of this additional instruction, therefore we reverse the court of appeals’ 
judgment and remand for that court to consider the other issues raised in the 
appeal.[1]
I 

Paul Dew fell 
to his death through an opening in an oil derrick platform. The derrick was 
under construction at the time of the accident, and the key dispute at trial 
concerned who was responsible for the inadequately protected hole left in the 
platform. The jury concluded that the derrick’s owner, Rowan Companies, Inc., 
its designer, Woolslayer Companies, Inc., and its erector, Crown Derrick 
Erectors, Inc., were all responsible and apportioned fault among them. 
The derrick 
is known as the Gorilla V, a multi-tiered offshore drilling rig designed by 
Woolslayer for use in the North Sea. It has working platforms set at varying 
heights, including a fourble [2] platform set approximately 
eighty-eight feet up the derrick. Two openings in this platform allow for 
ladders that are required for such rigs. Woolslayer’s design required safety 
gates to be erected around the ladder openings to prevent a person from falling 
through the opening. 
Rowan hired 
Crown Derrick to erect the Gorilla V derrick from parts manufactured and 
supplied by Woolslayer, and construction began in March 1998. While assembling 
the ladders, Crown Derrick discovered that it did not have some of the necessary 
parts for installing the safety gates around one of the ladder openings in the 
fourble platform. Rowan’s construction manager was told about the missing parts, 
and he notified Woolslayer.
By August 
1998, Crown Derrick had virtually completed assembly of the derrick, but was 
still missing some parts for one of the safety gates. Crown Derrick left the job 
site on August 28 without having installed the safety gates around one opening 
on the fourble platform and the ladder for that opening. Before leaving, Crown 
Derrick placed two ropes around the otherwise unprotected and obviously 
dangerous opening. The ropes were tied across the platform’s railing as a means 
to block the walkway and prevent a worker from simply walking into the opening 
unaware. 
On September 
22, 1998, Crown Derrick returned to complete its work, but a crane it needed to 
install the ladder was not working. Crown Derrick also asserts that it still did 
not have some parts for the safety gates and so nothing was accomplished that 
day. Apparently, no one with Crown Derrick ascended to the fourble platform to 
inspect the condition of the double-rope barricade it had left the month before 
to secure the opening. The next day, Paul Dew, an employee of one of Rowan’s 
associated companies, was working on this platform and fell through the opening 
to his death.
The 
double-rope barricade was not maintained while Crown Derrick was away from the 
work site. At some point, an electrical junction box may have been used to cover 
the opening, and still later, a single-rope was used to guard the opening. No 
one actually witnessed the accident, and a dispute exists whether even the 
single-rope barricade was in place on the day Mr. Dew fell.
After the 
accident, Paul Dew’s wife and parents sued Rowan, Woolslayer, and Crown Derrick. 
Their wrongful death and survival action was tried to a jury which found that 
the negligence of all three defendants contributed to cause Mr. Dew’s death. The 
jury also awarded damages, apportioning responsibility as follows:
ROWAN 
COMPANIES, 
INC.                       
47% 
WOOLSLAYER 
COMPANIES, INC.           
30%
CROWN 
DERRICK 
ERECTORS                  
20%
PAUL 
DEW                                                    
3% 
TOTAL                                                            
100%
The trial 
court rendered judgment on the verdict. 
Only Crown 
Derrick appealed, complaining among other things that the trial court had erred 
in refusing to submit a jury instruction on new and independent cause. Agreeing 
that this instruction was necessary and its omission harmful, the court of 
appeals reversed the judgment against Crown Derrick and remanded the Dews’ 
claims against it for a new trial. The court concluded that an instruction was 
needed because a fact question existed as to “whether any intervening act 
occurred, and was an unforeseeable new and independent cause.” 117 S.W.3d at 
537. One justice dissented, questioning whether there was any evidence upon 
which a reasonable jury could conclude that the intervening acts were 
unforeseeable, but also questioning whether any subsequent forces intervened to 
alter the consequences of Crown Derrick’s original negligence. See 117 
S.W.3d at 537 (Burgess, J. dissenting).
II
A new and 
independent cause is one that intervenes between the original wrong and the 
final injury such that the injury is attributed to the new cause rather than the 
first and more remote cause. Robert R. Walker, Inc. v. Burgdorf, 244 
S.W.2d 506, 509 (Tex. 1951); Phoenix Ref. Co. v. Tips, 81 S.W.2d 60, 61 
(Tex. 1935). An intervening cause thus supersedes the defendant’s negligence by 
destroying the causal connection between that negligence and the plaintiff’s 
injury thereby relieving that defendant of liability. See generally 1 James B. Sales and J. Hadley Edgar, Texas 
Torts and Remedies § 1.04[4] (2005). It is one of a number of inferential 
rebuttal defenses that “operates to rebut an essential element of the 
plaintiff’s case by proof of other facts.” Dillard v. Tex. Elec. Coop., 
157 S.W.3d 429, 430 (Tex. 2005); see also Comm. On Pattern Jury Charges, State Bar of 
Tex., Texas Pattern Jury Charges‑‑General Negligence & Intentional Personal 
Torts PJC 3.1‑3.5 (2003) (inferential rebuttal instructions). The 
instruction’s purpose is “to advise the jurors, in the appropriate case, that 
they do not have to place blame on a [particular defendant] to the suit” if the 
true cause for the accident lies elsewhere. Dillard, 157 S.W.3d at 432 
(citing Reinhart v. Young, 906 S.W.2d 471, 472 (Tex. 1995)). The 
instruction is necessary when the evidence in the case raises a fact issue on 
new and independent cause. Dallas Ry.& Terminal Co. v. Bailey, 250 
S.W.2d 379, 384 (Tex. 1952); Young v. Massey, 101 S.W.2d 809, 810 (Tex. 
1937).
As in the 
court below, the parties here generally disagree about whether evidence supports 
the submission of this inferential rebuttal instruction. Specifically, they 
disagree about whether Rowan’s or someone else’s act in altering or removing the 
ropes was foreseeable and an intervening act that should supersede Crown 
Derrick’s own negligence.
“Generally 
speaking, if the intervening force was foreseeable at the time of the 
defendant’s negligence, the force is considered to be a ‘concurring cause’ of 
the plaintiff’s injuries,” and “the defendant remains liable for the original 
negligence.” Sales and Edgar § 
1.04[4][b] at 1-55; see also J. Wigglesworth Co. v. Peeples, 985 S.W.2d 
659, 665 (Tex. App.‑Fort Worth 1999, pet. denied) (“if an intervening cause was 
reasonably foreseeable by the defendant in the exercise of ordinary care, it 
cannot be considered a new and independent cause”). If, on the other hand, “the 
intervening act is extraordinary under the circumstances, not foreseeable in the 
normal course of events, or independent of or far removed from the defendant’s 
conduct, it may well be a superseding act.” Derdiarian v. Felix Contracting 
Corp., 414 N.E.2d 666, 670; 434 N.Y.S.2d 166, 169 (1980). What generally 
distinguishes a superseding cause from one that merely concurs in the injury is 
that the intervening force was not only unforeseeable, but its consequences also 
unexpected:
 
[A] 
superseding cause is one that alters the natural sequence of events and produces 
results that would not otherwise have occurred. Or one that is “of such an 
extraordinary nature or so attenuates defendant’s negligence from the ultimate 
injury that responsibility for the injury may not be reasonably attributed to 
the defendant.” An intervening force will not break a causal connection if that 
force was itself probable or foreseeable by the original wrongdoer. It must be 
one not brought into operation by the original wrongful act and must operate 
entirely independently of such original act.
 
 
1 J.D. Lee & Barry A. Lindahl, Modern Tort 
Law § 4:7 at 4-14 - 4-15 (2d ed. 2002) (footnotes and citations 
omitted).
We have 
relied on the Restatement in the past to aid us in determining when an 
intervening force rises to the level of a new and independent or superseding 
cause. See Phan Son Van v. Pena, 990 S.W.2d 751,754 (Tex. 1999); 
Humble Oil & Ref. Co. v. Whitten, 427 S.W.2d 313, 315 (Tex. 1968). 
The Restatement, which itemizes six factors as useful when making this 
determination,[3] generally parses the core principles 
already discussed — that a superseding cause ordinarily involves the 
intervention of an unforeseen, independent force from a third party, causing 
injury different from that which might have been expected at the time of the 
original negligent act. See Restatement (Second) of Torts § 442 
(a)-(d) (1965). The Restatement also lists considerations that are not relevant 
to our present circumstances, such as whether the intervening act was 
intentional or criminal. See id. § 442(e)-(f). But as our case law and 
the Restatement make clear, the threshold, and often controlling, inquiry when 
distinguishing between a concurring and a superseding cause remains “whether the 
intervening cause and its probable consequences were such as could reasonably 
have been anticipated by the original wrongdoer.” Bell v. Campbell, 434 
S.W.2d 117, 120 (Tex. 1968).
III
The Dews 
argue that, given the insubstantial nature of Crown Derrick’s rope barricade, it 
was inevitable that it would be altered. They submit that Crown Derrick should 
have protected the opening with a fixed, static barrier instead that could not 
so easily be altered or removed. Crown Derrick’s failure to do this, the Dews 
submit, was negligence that combined with others’ foreseeable negligence to 
cause this accident. Thus, because the accident was a foreseeable consequence of 
the creation of a dangerous hole which Crown Derrick failed adequately to 
safeguard, the Dews conclude that the intervening acts cannot be considered new 
and independent.[4]
Crown 
Derrick, on the other hand, maintains that it was entitled to an instruction on 
new and independent cause because the possibility that someone would alter or 
remove its barricade was not foreseeable, and the barricade was a safety 
precaution that Crown Derrick suggests was completely adequate to protect others 
from the dangerous opening. Crown Derrick thus views the alteration or removal 
of its rope barrier, without an adequate replacement, as an extraordinary and 
unexpected occurrence, and therefore some evidence of a new and independent 
cause. 
Crown 
Derrick’s argument, however, is premised on an erroneous assumption — that its 
double rope barricade was an adequate safeguard.[5] Were this true, Crown Derrick would 
not have needed an instruction on new and independent cause because it would not 
have been negligent in the first place. The jury obviously did not view the 
double-rope barricade as an adequate precaution against the hazard left by Crown 
Derrick, probably because the ropes could so easily be altered or removed. Its 
verdict indicates that Crown Derrick breached its duty of ordinary care by 
leaving an open hole in the platform without adequate safeguards.
Any 
intervening acts which exploited this inadequacy did not fundamentally alter the 
foreseeable consequences of Crown Derrick’s original negligence. See 
Tex-Jersey Oil Corp. v. Beck, 305 S.W.2d 162, 166 (Tex. 1957) (bolt of 
lightning that ignited vapors defendant negligently permitted to escape from 
tank not new and independent cause). As one authority has observed:
 
Obviously 
the defendant cannot be relieved from liability by the fact that the risk, or a 
substantial and important part of the risk, to which the defendant has subjected 
the plaintiff has indeed come to pass. Foreseeable intervening forces are within 
the scope of the original risk, and hence of the defendant’s negligence. The 
courts are quite generally agreed that intervening causes which fall fairly in 
this category will not supersede the defendant’s responsibility.
 
 
Keeton et Al., Prosser and Keeton on the Law 
of Torts, § 44, at 303 (5th ed. 1984). Where the intervening act’s risk 
is the very same risk that renders the original actor negligent, the intervening 
act cannot serve as a superseding cause. See Tex-Jersey Oil Corp., 305 
S.W.2d at 166; Derdiarian, 414 N.E.2d at 671; Restatement (Second) of Torts § 442 B 
(Intervening Force Causing Same Harm as That Risked by Actor’s Conduct).[6] Because these are our present 
circumstances, Crown Derrick was not entitled to an instruction on new and 
independent cause.
The court of 
appeals’ judgment is reversed and the cause is remanded for consideration of 
other issues raised, but not considered, in that court.
 
 
____________________________________
David M. 
Medina
Justice
 
 
Opinion 
delivered:         June 30, 2006
 








[1] Having found error in the court’s charge, the court of 
appeals did not consider Crown Derrick’s other issues concerning the sufficiency 
of the evidence and the computation of the judgment under Chapter 33 of the 
Civil Practices and Remedies Code.

[2] “A stand of drill pipe consisting of four lengths.” 
Webster’s New International Dictionary 
997 (2d ed. unabridged 1954).

[3] The following considerations are of importance in 
determining whether an intervening force is a superseding cause of harm to 
another:
(a) the fact that [the intervening force] brings about 
harm different in kind from that which would otherwise have resulted from the 
actor’s negligence;
(b) the fact that [the intervening force’s] operation or 
the consequences thereof appear after the event to be extraordinary rather than 
normal in view of the circumstances existing at the time of [the force’s] 
operation;
(c) the fact that the intervening force is operating 
independently of any situation created by the actor’s negligence, or, on the 
other hand, is or is not a normal result of such a situation;
(d) the fact that the operation of the intervening force 
is due to a third person’s act or to his failure to act;
(e) the fact that the intervening force is due to an act 
of a third person which is wrongful toward the other and as such subjects the 
third person to liability to him;
(f) the degree of culpability of a wrongful act of a 
third person which sets the intervening force in motion.
 
Restatement (Second) of 
Torts § 442 (1965).
 

[4] The Dews further argue that, even though they should 
prevail under a traditional proximate cause analysis, Texas jurisprudence would 
be better served by replacing that analysis with the “scope-of-liability” 
principles espoused by the American Law Institute in the tentative draft of the 
Third Restatement of Torts. See Restatement (Third) of Torts: Liability for 
Physical Harm (Basic Principles) § 29 (Tentative Draft No. 3, 2003) (“An 
actor is not liable for harm different from the harms whose risks made the 
actor’s conduct tortious.”). This tentative draft suggests that the term 
“proximate cause” has proven a poor choice for describing the limits of 
liability because it “implies that there is but one cause — the cause nearest in 
time or geography to the plaintiff’s harm — and that factual causation bears on 
the issue of scope of liability.” Restatement (Third) of Torts: Liability for 
Physical Harm (Basic Principles) § 29, cmt. b (Tentative Draft No. 3, 
2003). Because neither implication is correct, the draft suggests that the term 
“proximate cause” and the accompanying instructions typically used to define the 
term be abandoned; that its component elements of cause in fact and 
foreseeability be considered separately; and that legal cause hereafter be 
defined in terms of the “scope of liability” which is meant to convey “the idea 
that an actor should be held liable only for harm that was among the potential 
harms — the risks — that made the actor’s conduct tortious.” Id. cmt. b 
& d. While we applaud any effort to bring greater clarity to this difficult 
area of the law, we must decline the invitation to abandon decades of case law, 
not to mention the Restatement (Second) of Torts, before even the American Law 
Institute has done so.
 

[5] Crown Derrick argues that it was entitled to an 
instruction on new and independent cause because “the evidence raises the 
question of whether Paul Dew’s accident was caused by the properly barricaded 
ladder opening left by Crown Derrick, or by the improperly barricaded 
ladder opening that came into being as the result of intentional actions by 
other parties after Crown Derrick left the worksite.” (emphasis 
added).

[6] “Where the negligent conduct of the actor creates or 
increases the risk of a particular harm and is a substantial factor in causing 
that harm, the fact that the harm is brought about through the intervention of 
another force does not relieve the actor of liability, except where the harm is 
intentionally caused by a third person and is not within the scope of the risk 
created by the actor’s conduct.”